parties, J. R. Armstrong. The British regis-·
ter of February 11, 1861, is in the names of
the above parties. The documentary proofs
as to tho property in the cargo shows it to
be in J.·R. Armstrong. I shall give the same
direction to this case that I did to the case
cf The Alliance [supra], and make an order·
for further proofs as to the property in the
vessel and cargo at the time of capture.

[Both cases were heard upon the proofs as
ordered, the decrees of the district court in each
case being reversed, and the property restored
to its owners. Case No. 5,528.]

## Case No. 5,528.

### The GONDAR.

### The ALLIANCE.

[Blatchf. Pr. Cas. 669.] [1]

Circuit Court, S. D. New York. Jan. 8, 1864.[2]

PRIZE—RESTORATION TO CLAIMANTS.

On further proof, the vessels and cargoes were
*held* to be neutral property, and ordered to be
restored to the claimants. Decree of the dis-
trict court, condemning them, reversed.

[These vessels and their cargoes were
seized by the United States in the harbor of·
Beaufort, N. C., and libeled for alleged viola-
tions of the blockade. Decrees of condemna-
tion and forfeiture of both vessels and their
cargoes were entered in the district court.
(Cases Nos. 5,526 and 245), from which de-
crees the claimants appealed. When the
cases came up for hearing in the circuit
court (Cases Nos. 5,527 and 246), the vessel
and her cargo in each case was acquitted of
the alleged violation, and an order made for
further proofs as to the ownership of the
property.]

NELSON, Circuit Justice. The further
proofs in the above cases having been sub-
mitted to me for their final disposition, I
have looked into them, and they appear to
be full in supplying the deficiency upon the
question whether Armstrong and Gerard,
British subjects, were the owners of the
Gondar at the time of her seizure; and also
upon the question whether Armstrong was,
at the time, the owner of her cargo. They
are also full to show that the same persons
were the owners of the Alliance at the ·time
of her seizure, and that Armstrong was, at
the time, the owner of her cargo. These be-·
ing the only questions in the cases upon
which any doubt existed, in ·the judgment of
the court, at the former hearing, and which
led to the commission for further proofs up-
on .them, let a decree be entered, in each
case, in favor of the claimants.

## Case No. 5,529.

### GONG BELL CO. v. CLARK.

[See Case No. 5.]

1 [Reported by Samuel Blatchford, Esq.]
2 [Reversing Cases Nos. 5,526 and 245.]·

## Case No. 5,530.

### GONZALES v. MINOR.

[2 Wall. Jr. 348.] [1]

Circuit Court, E. D.˙ Pennsylvania. Oct. 30,
1852.

INTERNATIONAL COMITY—ADMIRALTY INTERVEN-
TION—COSTS.

1. The exercise of admiralty jurisdiction in
suits by foreign seamen for wages, is matter
of comity rather than of duty; and generally
speaking, is exercised only under such circum-
stances as might infer the presumption of a re-
quest from the foreign state: as, for example,
where a voyage is ended or broken up, and the
seamen discharged; or where there is strong
reason to believe that there would be a failure
of remedy, in case the mariners were compelled
to await an oportunity of obtaining redress in
their own courts.

  ·[Cited in The Becherdass Ambaidass, Case
No. 1,203; The Carolina, 14 Fed. 426; The
Topsy, 44 Fed. 635.]

[Cited in Roberts v. Knights, 89 Mass. 450.]

2. In a case of "transparent contrivance,"
proved by an intervenor upon evidence in this
court, which was not before the court below,
the libel was dismissed with costs .to the inter-
venors and consignees, against the libellants
and the contriving defendant, contrary to the
rule established in Carrigan v. The Charles Pit-
man [Case No. 2,444]. which does not allow
costs on a judgment of reversal in .this court,
obtained upon new evidence, not had in the
*t*ourt below.

[Appeal from the district court of the
United States for the Eastern district of
Pennsylvania.]

This was a libel for wages by ten Spanish
sailors, mariners of a Spanish schooner, the
Vencejo, against Antonio Minor, its master,
and Figuera and others, consignees in whole
or in part of the cargo or vessel. The
libel set forth that the schooner having been
at Barcelona, and "destined on a voyage
thence by way of Cette to Philadelphia," the
said master hired the libellants to serve as
mariners "for and during said voyage;" but
it stated afterwards, that the vessel having
arrived at Philadelphia and delivered her
cargo, and made freight, "that the libellants
still continue on board and in the service of
the said schooner." There was no allega-
tion, therefore, that the voyage was ended.
The libel sought process against the respond-
ents, but asked none against the vessel. It
claimed wages to the amount of $660; it
being sworn that one mariner had shipped
at $40 a month, another at $25, and another
at $18. No copy of the shipping articles
was annexed. The return of the process
was "Non est inventus" as to Minor, the mas-
ter; and an attachment of the credits and
effects of the owners of the vessel in the
hands of the consignee, to the value of $660.
A few days previously to this libel being
filed, on ·the 11th of September, 1851, Messrs.
H. & W. P. Hall, of South Carolina, had
brought a suit against one Manuel Roger, a
foreign attachment, in a state court at Phil-

·.1[Reported by John William Wallace, Esq.]